**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CIVIL ACTION NO. 3:18-CV-580-CHB-CHL**

**CRUCITA M. PADILLA,**

                                                                **Plaintiff,**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**                           **Defendant.**

## REPORT AND RECOMMENDATION

Before the Court is the Complaint of Plaintiff, Crucita M. Padilla, formerly known as Crucita M. Padilla McFall ("Padilla"), challenging the final decision of the Commissioner of Social Security (the "Commissioner") denying her claim for Supplemental Security Income ("SSI"). This case was referred to the undersigned Magistrate Judge to prepare a report and recommendation. (DN 15.) Padilla filed a Fact and Law Summary on April 5, 2019, (DN 17), and the Commissioner filed a Fact and Law Summary on July 5, 2019, (DN 22). Therefore, this matter is ripe for review.

For the reasons set forth below, the undersigned Magistrate Judge **RECOMMENDS** that the final decision of the Commissioner be **AFFIRMED**.

**I.     FINDINGS OF FACT**

Padilla filed an application for SSI on October 16, 2015. (DN 11-5, at PageID # 245-54.) Administrative Law Judge ("ALJ") William C. Zuber conducted a hearing on Padilla's application on December 12, 2017. (DN 11-2, at PageID # 85-121.) In a decision dated March 7, 2018, the ALJ engaged in the five-step sequential evaluation process promulgated by the Commissioner to determine whether Padilla was disabled. (*Id.* at 65-78.) In completing this evaluation, the ALJ made the following findings:

(1) The claimant has not engaged in substantial gainful activity since October 14, 2015, the application date. (*Id.* at 67.)

(2) The claimant has the following severe impairments: degenerative disc disease of the lumbar spine; osteoarthritis of the hip; diagnostic history of obesity; PTSD (post-traumatic stress disorder); depression; anxiety; and borderline intellectual functioning. (*Id.* at 67-68.)

(3) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 68.)

(4) [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except simple, routine, 1-3 step tasks that are non-fast paced or quota driven; no more than occasional climbing of ramps and stairs; frequent balancing, stooping, kneeling, crouching, and crawling; no climbing of ladders, ropes, or scaffolds; occasional exposure to vibration; occasional contact with coworkers and supervisors but no contact with the general-public; any changes in her work routine or environment would be rare and gradually introduced; and she can sustain concentration, persistence, and pace for periods of 2-hours at a time. (*Id.* at 70.)

(5) The claimant is capable of performing past relevant work as a cleaner/housekeeper. This work does not require the performance of work-related activities precluded by the claimant's residual functioning capacity. (*Id.* at 76.)

(6) The claimant has not been under a disability, as defined in the Social Security Act, since October 14, 2015, the date the application was filed. (*Id.* at 78.)

Padilla requested review by the Appeals Council, which denied her request for review on June 29, 2018. (*Id.* at 50-56.) At that point, the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 422.210(a) (2019); *see also* 42 U.S.C. § 405(h) (2018) (discussing finality of the Commissioner's decision). Pursuant to 20 C.F.R. § 422.210(c), Padilla is presumed to have received that decision five days later. 20 C.F.R. § 422.210(c). Padilla filed this action on August 29, 2018. (DN 1.)

## II. CONCLUSIONS OF LAW

The Social Security Act authorizes payments of SSI to persons with disabilities. *See* 42 U.S.C. § 1381-1383f (2018). An individual shall be considered "disabled" if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 416.905(a) (2019).

### A. Standard of Review

The Court may review the final decision of the Commissioner; however, the Court may only consider whether the Commissioner's findings are supported by "substantial evidence" and whether the Commissioner applied the correct legal standards. *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). "Substantial evidence" is "more than a mere scintilla"; it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Court must "affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013); *see also Smith v. Sec'y of Health and Human Servs.*, 893 F.2d 106, 108 (6th Cir. 1989) (holding that if the Court determines the ALJ's decision is supported by substantial evidence, the court "may not even inquire whether the record could support a decision the other way"). However, "failure to follow agency rules and regulations" constitutes a lack of substantial evidence, even where the Commissioner's decision can be justified by the record. *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).

B. **Five-Step Sequential Evaluation Process**

The Commissioner has promulgated regulations that set forth a five-step sequential evaluation process that an ALJ must follow in evaluating a disability claim. 20 C.F.R. § 416.920 (2019). In summary, the evaluation process proceeds as follows:

(1) Is the claimant involved in substantial gainful activity? If the answer is "yes," the claimant is not disabled. If the answer is "no," proceed to the next step.

(2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement[1] and significantly limits his or her physical or mental ability to do basic work activities? If the answer is "yes," the claimant is disabled. If the answer is "no," procced to the next step.

(3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within 20 C.F.R. Part 404, Subpart P, Appendix 1? If the answer is "yes," the claimant is disabled. If the answer is "no," proceed to the next step.

(4) Does the claimant have the residual functional capacity ("RFC") to return to his or her past relevant work? If the answer is "yes," the claimant is not disabled. If the answer is "no," proceed to the next step.

(5) Does the claimant's RFC, age, education, and work experience allow him or her to make an adjustment to other work? If the answer is "yes," the claimant is not disabled. If the answer is "no," the claimant is disabled.

*Id.* The claimant bears the burden of proof with respect to steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden only shifts to the Commissioner at step five to prove the availability of other work in the national economy that the claimant is capable of performing. *Jordan v. Comm'r of Soc. Sec.*, 548 F. 3d 417, 423 (6th Cir. 2008). The claimant always retains the burden of proving lack of RFC. *Id.*; *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999).

---

[1] To be considered, an impairment must be expected to result in death or have lasted or be expected to last for a continuous period of at least twelve months. 20 C.F.R. § 416.909 (2019).

### C. Plaintiff's Contentions

Padilla alleged that the ALJ erred in several ways. First, Padilla alleged that the ALJ's determination of Padilla's physical RFC was not supported by substantial evidence because the ALJ erred in evaluating the opinion of consultative examiner Robert L. Nold, M.D. ("Dr. Nold"). (DN 17, at Page ID # 708-12.) Second, Padilla alleged that the ALJ's determination of Padilla's mental RFC was not supported by substantial evidence because the ALJ erred in evaluating the opinion of consultative examiner J. Lorilea Conyer, MA, LLP ("Ms. Conyer"). (*Id.* at 712-17.) Third, Padilla alleged that the ALJ's finding at step four was not supported by substantial evidence because the ALJ failed to consider Padilla's accommodations at her past work. (*Id.* at 717-19.) Finally, Padilla argued that the ALJ's determination at step five was not supported by substantial evidence because the ALJ failed to reconcile Padilla's mental impairments with the testimony of the Vocational Examiner ("VE"). (*Id.* at 719-22.)

### 1. Dr. Nold's Opinion

Padilla alleged that the ALJ's physical RFC determination was not supported by substantial evidence because he failed to "afford appropriate weight to the opinion of consultative examiner, [Dr. Nold]." (DN 17, at PageID # 709.) The source of a medical opinion dictates the process by which the ALJ gives it weight. *Gayheart*, 710 F.3d at 376. Generally, the ALJ is required to give more weight to a source who has examined the claimant than one who has not and more weight to a source who regularly treats that claimant than one who does not. *Id.* at 375. In affording weight to an examining source, the ALJ is required to "consider factors including the length and nature of the treatment relationship, the evidence that the physician offered in support of her opinion, how consistent the opinion is with the record as a whole, and whether the physician was practicing in her specialty." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010). However, a

5

medical opinion from an examining source is "never assessed for 'controlling weight.' " *Gayheart*, 710 F.3d at 376. Further, unlike when an ALJ gives less than controlling weight to the opinion of a treating physician, an ALJ is not required to give "good reasons" for the weight ascribed to an examining physician's opinion. *See Ealy*, 594 F.3d at 514 ("[A]n ALJ is procedurally required to 'give *good reasons* in [his] notice of determination or decision for the weight [he gave the claimant's] treating source's opinion.' However, this requirement only applies to treating sources." (emphasis added)). Instead, the ALJ must only "say enough 'to allow the appellate court to trace the path of his reasoning.' " *Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011) (quoting *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995)).

Here, the ALJ placed only limited weight on Dr. Nold's opinion, finding that the opinion was consistent with neither "the claimant's overall history of conservative care" nor "the radiographic studies of record." (DN 11-2, at PageID # 75.) As to the inconsistency with the radiographic studies of record, the ALJ incorporated his earlier analysis of these studies. (*Id.* at 76.) The ALJ had noted that there were only minimal findings on the radiographic studies of record. (*Id.* at 72.) The ALJ explained that a September 2015 MRI indicated only minimal facet arthropathy, an October 2016 x-ray of her hip revealed no displaced fracture, and a March 2017 MRI of her hip/pelvis was negative. (*Id.* at 71-72.) The ALJ also cited to a May 2015 lumbar MRI that revealed little change from a May 2012 MRI, minimal facet arthropathy, normal lumbar disc spaces, "no lumbar disc herniation," and identified "no lumbar central canal or foraminal narrowing," as well as the May 2012 MRI itself that noted "normal signal in the intervertebral discs"; "no evidence of focal disc protrusion, central canal or foraminal stenosis"; and the impression of a "normal exam." (*Id.* at 72 (quoting DN 11-7, at PageID# 460, 621).) By way of further explanation for the weight he ascribed to Dr. Nold's opinion, the ALJ also cited to the fact

6

that Padilla told Dr. Nold that she had to quit cleaning apartments because she could not do the manual work, yet testified at the hearing that she was then cleaning apartments on a part time basis. (*Id.* at 75-76.) Finally, the ALJ noted that Padilla had an "overall history of conservative care for her pain complaints." (*Id.* at 76.)

Padilla contended that this analysis was insufficient for two reasons. (DN 17, at PageID # 709.) First, Padilla alleged it was insufficient because it did not acknowledge those portions of the record that supported a finding of disability. (*Id.*) However, Padilla cited to no law requiring the ALJ to do so in weighing the opinion of examining source. Instead, the ALJ is merely required to assess the opinion according to the regulatory factors, one of which is whether the opinion is consistent with the record as a whole. *See Ealy*, 594 F.3d at 514; 20 C.F.R. § 416.927(c) (2019). Here, the ALJ explicitly cited to evidence that Dr. Nold's opinion was inconsistent with other evidence in the record, including Padilla's own testimony, which is sufficient to allow the Court to trace the path of his reasoning. Thus, the ALJ's decision appropriately comported with the rules regarding opinion weight.

Second, Padilla relied on *Underwood v. Soc. Sec. Admin.*, No. 3:16-cv-00546, 2017 WL 128518, at *1 (M.D. Tenn. Jan. 11, 2017), to argue that ALJ incorrectly imposed his own notion that "conservative treatment" correlates with less impairment. (DN 17, at PageID # 711.) Padilla argued that she had been proscribed Skelaxin for back pain; has a medical history that includes NSAIDs, muscle relaxants, and neuropathics; utilized heat and recumbency and slept with a pillow between her legs for pain; attended physical therapy for eight months of 2017; and received medial branch blockades and transforaminal epidural steroid injections. (*Id.*) Padilla did not allege any surgical treatments or follow-ups with an orthopedist or neurosurgeon occurred. (*Id.*)

7

The Commissioner points the undersigned to the Sixth Circuit case of *Branon v. Comm'r of Soc. Sec.*, 539 F. App'x 675, 678 (6th Cir. 2013). In *Branon*, under the instruction of his pain specialist, the claimant was receiving injection therapy, physical therapy, and prescription medicine but eventually reverted solely to over-the-counter pain medication to control his back pain "with no explanation." *Id.* In upholding the ALJ's determination that Branon could still perform a limited range of light work, the Sixth Circuit observed that a conservative treatment regimen suggested the absence of a disabling condition. Accordingly, it was not error for the ALJ to rely on Padilla's conservative care to support the weight he ascribed to Dr. Nold's opinion.

Based on the foregoing, the undersigned finds that the ALJ's decision as to Padilla's physical RFC is supported by substantial evidence and finds no error in his assessment of Dr. Nold's opinion.

### 2. Ms. Conyer's Opinion

Padilla alleged that the ALJ afforded incorrect weight to the opinion of consultative examiner Ms. Conyer by rejecting Ms. Conyer's opinion that Padilla had a marked limitation in her capacity to understand, remember, and carry out instructions toward performance of simple repetitive tasks. (DN 17, at PageID # 712.) The ALJ afforded partial weight to Ms. Conyer's opinion as a whole but specifically rejected her opinion that Padilla had any marked mental limitations. (DN 11-2, at PageID # 76.) Ms. Conyer defined a "marked limitation" as a "serious limitation in [an] area" that severely limits but does not preclude the ability to function. (DN 11-7, at PageID # 436.) The ALJ rejected the finding of a marked limitation because it did "not appear consistent with the record on whole." As with Dr. Nold's opinion above, the ALJ was required to consider Ms. Conyer's opinion and weigh the same based on the regulatory factors. *See Ealy*, 594 F.3d at 514; 20 C.F.R. § 416.927(c).

8

Padilla alleged that Ms. Conyer's opinion is supported by Ms. Conyer's own examination findings, Padilla's individual and family therapy history, and the results of objective psychological testing. (DN 17, at PageID # 713-15.) Despite Padilla's allegations, the undersigned finds the ALJ properly supported his decision to ascribe only partial weight to Ms. Conyer's opinion and to reject her finding of marked limitations on Padilla's capacity to understand, remember, and carry out instructions. In doing so, the ALJ noted her lack of inpatient treatment and incorporated his previous discussion of Padilla's outpatient treatment. (DN 11-2, at PageID # 76.) He stated that Padilla's "emotional symptoms have been overall maintained through treatment follow-up" and that the record did not show "that a treatment provider has given the claimant any recent limitations/restrictions in her activities due to any mental impairment." (*Id.* at 74.) He also emphasized that Padilla "was working at least on a part-time basis (cleaning apartments) at the time of the hearing" despite having reported to Ms. Conyer that she had quit her work as an apartment cleaner "due to her hip and back problems." (*Id.* at 76; DN 11-7, at PageID # 434.) The ALJ also noted that Padilla's work activity indicated "that the claimant's daily activities have at least at times been somewhat greater than the claimant has generally reported." (DN 11-2, at PageID # 75.)

Further, the ALJ relied on the very tests Padilla argued demonstrate a marked limitation for the opposite conclusion. In September 2017, Padilla underwent psychological testing as part of her outpatient treatment at Communicare. (DN 11-7, at PageID # 647-57.) The ALJ highlighted certain results from this testing in his decision, including that Padilla "presented 'clean' and dressed 'appropriately' " during testing; "[r]apport was 'easily' established"; "[t]here was no indication of hallucinations"; "[s]he denied current suicidal/homicidal ideation, intent, or plans"; and "[s]he was overall 'cooperative.' " (DN 11-2, at PageID # 73 (quoting DN 11-7, at PageID #

9

647-57).) He also observed that as part of that testing, Padilla received a Full Scale IQ of seventy-eight and that the report of testing noted that Padilla's "two index scores representing processing speed and perceptual reasoning fell in the average range." (*Id.*) He stated that the testing suggested low reading comprehension and spelling abilities and that testing was "suggestive of 'moderate likelihood' of issues related to sustained attention." (*Id.*) He also emphasized that though the September 2017 testing indicated that Padilla had borderline intellectual functioning, even Ms. Conyer had ruled out a diagnosis of a more serious intellectual disorder. (*Id.* at 75; DN 11-7, at PageID # 436.) These findings support the weight the ALJ attributed to Ms. Conyer's opinion and his conclusion that the same was inconsistent with the record as a whole.

  Notably, the ALJ did not reject all of Ms. Conyer's opinion. Ms. Conyer had opined that Padilla's "ability to sustain attention and concentration towards performance of simple repetitive tasks appear[ed] affected by [her] impairments to a slight degree," meaning that Padilla had a "mild limitation in this area" but that she could "generally function well." (DN 11-7, at PageID # 435-36.) Ms. Conyer also found that Padilla's capacity to respond appropriately to supervisors and coworkers in a work setting appear[ed] unaffected by [her] impairments. (*Id.*) In his RFC finding, the ALJ limited Padilla to "occasional contact with coworkers and supervisors" and indicated that Padilla could only "sustain concentration, persistence, and pace for periods of 2-hours at a time." (DN 11-2, at PageID # 70.) The former actually reflects a higher degree of limitation than that posited by Ms. Conyer and the latter is consistent with her finding of a mild impairment. The ALJ's failure to reject wholesale Ms. Conyer's opinion also supports a conclusion that he appropriately weighed the same. *See Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 391-92 (6th Cir. 2004) (finding an ALJ properly rejected a portion of a treating physician's opinion and noting that the Court found "it significant that the administrative law judge did not reject wholesale the

10

conclusions of Dr. Sonke and indeed incorporated [other of the physician's limitations] . . . in formulating hypothetical questions that he posed to the vocational expert").

Accordingly, the undersigned finds that the ALJ supported the weight he ascribed to Ms. Conyer's opinion with evidence a reasonable mind would accept as adequate to support his conclusion and appropriately concluded that Ms. Conyer's opinion regarding a marked limitation was inconsistent with the record as a whole. Accordingly, the undersigned finds that the ALJ supported his determination of Padilla's mental RFC with substantial evidence and finds no error in the ALJ's assessment of Ms. Conyer's opinion.

### 3. Step Four

Padilla argued that the ALJ's determination at step four that she could perform her past relevant work was unsupported by substantial evidence because the ALJ failed to consider that the work Padilla performed was accommodated work. (DN 17, at PageID # 717-19.) At step four, the ALJ must determine whether a claimant can return to his or her past relevant work. 42 U.S.C. § 423(d); 20 C.F.R. § 416.920(e). Past relevant work is "work that [the claimant] has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." 20 C.F.R. § 416.960(b)(1) (2019). When evaluating whether a claimant can perform past relevant work, the ALJ will examine the claimant's RFC and compare it to the physical and mental demands of the claimant's past work. 20 C.F.R. § 416.920(f). The relevant inquiry is whether the claimant can return to his past type of work rather than just his or her past job. *Studaway v. Sec'y of Health & Human Servs.*, 815 F.2d 1074, 1076 (6th Cir. 1987). Accommodated work is a factor to consider in determining whether a claimant can perform past relevant work. 20 C.F.R. 416.973(c) (2019) ("If your work is done under special conditions, we may find that it does not show that you have the ability to do substantial gainful activity.").

At step four, based on the VE's testimony and his own determination of Padilla's RFC, the ALJ found that Padilla's past relevant work as a cleaner/housekeeper constituted substantial gainful activity. (DN 11-2, at PageID # 76.) Padilla argued that the ALJ failed to consider whether her work was accommodated such that it could not constitute substantial gainful activity for the purposes of determining past relevant work. (DN 17, at PageID # 717.) However, as noted by the Commissioner, Padilla did not specifically raise any questions regarding accommodated work with the VE or raise the issue of accommodated work in her post-hearing brief.[2] (DN 11-6, at PageID # 343-44.) Padilla likewise neither raised this issue in her prehearing brief (*Id.* at 340-42), nor in her request for review to the Appeals Council (DN 11-4, at PageID # 232-36.) The Sixth Circuit has held that failure to raise a claim at the administrative level generally forfeits the ability to raise the same in federal court. *See Maple v. Apfel*, 14 F. App'x 525, 537 (6th Cir. 2001); *Luukkonen v. Comm'r of Soc. Sec.*, 653 F. App'x 393, 405 (6th Cir. 2016) (holding that claimant forfeited challenge to ALJ's failure to issue subpoena where challenge was not raised at the administrative hearing); *Maloney v. Comm'r of Soc. Sec.*, 480 F. App'x 804, 810 (6th Cir. 2012) (noting that claimant forfeited argument presented for the first time to the District Court). Accordingly, the undersigned finds that Padilla has waived this argument by failing to raise it below.

Even if Padilla had not waived this argument, the undersigned finds that the error in the ALJ's step four finding, if any, was harmless. If an ALJ determines at step four that the claimant is not capable of performing her past relevant work, the ALJ proceeds to determine whether there is other work in that national economy that the claimant is capable of performing. *See* 20 C.F.R. § 416.920(g)(1); *Walters*, 127 F.3d at 529. Here, even though the ALJ concluded Padilla was

---

[2] In response to a question from her representative regarding whether she would be able to work forty hours per week, Padilla testified that her mother "lets [her] rest" and lets her have as many breaks as possible. (DN 11-2, at PageID # 105.) Padilla also testified that her mother would give her special instructions regarding her job "because she already knows how [Padilla's] condition is" because her mother "knows how to work around it and help her out." (*Id.* at 112.)

12

capable of performing her past relevant work, he went on, in the alternative, to assess whether there was other work that Padilla was capable of performing, concluding that there was. (DN 11-2, at PageID # 77-78.) Thus, because the undersigned concludes below that the ALJ's analysis at step five was supported by substantial evidence, the error alleged by Padilla at step four, if any, was harmless. *See Demarco v. Comm'r of Soc. Sec.*, No. 4:17-cv-1376, 2018 WL 3616258, at *4 (N.D. Ohio July 30, 2018); *Waters v. Comm'r of Soc. Sec.*, No. 2:17-cv-752, 2018 WL 2015845, at *7 (S.D. Ohio May 1, 2018). Accordingly, the undersigned finds Padilla's arguments regarding the ALJ's step four analysis do not justify remand.

### 4. Step Five

Padilla argued that the ALJ erred at step five in determining there was other work she was capable of performing because he failed to properly consider her cognitive impairments. (DN 17, at PageID # 719.) At step five, the ALJ has the burden of demonstrating that there exist a significant number of jobs in the national economy that the claimant can perform, given his or her residual functional capacity, age, education, and past work experience. 20 C.F.R. § 416.920(a)(4)(v), (g); 20 C.F.R. § 416.960(c) (2017); *Jordan*, 548 F.3d at 423. The Commissioner may meet this burden by relying on expert vocational testimony received during the hearing to determine what jobs exist in significant numbers in the economy that the claimant can perform considering the combination of his or her limitations. *See, e.g.*, *Fry v. Comm'r of Soc. Sec.*, 476 F. App'x 73, 76 (6th Cir. 2012); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004).

Here, the ALJ found that there existed jobs in significant numbers in the national economy that Padilla was capable of performing. (DN 11-2, at PageID # 77.) Based on the testimony of VE Stambaugh, the ALJ concluded that Padilla was capable of performing the jobs of laundry worker, inspector, and trimmer/cutter. (*Id.* at 77-78.) The Dictionary of Occupational Titles

("DOT") describes these jobs in Sections 589.687-014, 529.687-114, and 751.684-014 respectively. U.S. Dep't of Labor, *Dictionary of Occupational Titles,* § 589.687-014 (rev. 4th ed. 1991) (1991 WL 684519); *id* at § 529.687-114 (1991 WL 674763); *id.* at § 751.684-014 (1991 WL 680317). The DOT describes these jobs as requiring level-2 reasoning, which the DOT defines as the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions." *Dictionary of Occupational Titles,* §§ 589.687-014, 529.687-114, 751.684-014. The VE identified these jobs based on a hypothetical that mirrored the ALJ's RFC, including his finding that Padilla was capable of performing "simple, routine, 1-3 step tasks that are non-fast paced or quota driven . . . ." (DN 11-2, at PageID # 70, 114-15.)

Padilla contended that "the ALJ failed to properly consider Plaintiff's cognitive impairments when establishing that there are other jobs that exist in significant numbers that she can perform." (DN 17, at PageID # 719.) Padilla points to multiple evidentiary items to show that her cognitive impairments, including failing her driver's license test; attending special education classes; homeschooling as a child; and low range and below average cognitive testing, resulted in lesser writing, speaking, and math abilities. (*Id.* at 718-21.) Because of these cognitive impairments, Padilla argued that she neither could perform consistent with a reasoning level 2 nor possessed the required math, language, or writing skills required by the DOT for the various positions such that her impairments would "impact her ability to perform any of these jobs in a work setting on a regular and continuing basis." (*Id.* at 721-22.)

In her post-hearing brief to the ALJ, Padilla objected to her ability to perform jobs requiring reasoning level two. (DN 11-6, at PageID # 343.) She generally objected to her ability to perform the mental requirements of the job identified, but in doing so, only cited the VE's testimony that "a marked impairment in a capacity to understand, remember, and carry out instructions towards

14

performance of simple repetitive tasks would preclude the jobs cited," based on Ms. Conyer's finding of a marked impairment in this area. (*Id.*) The ALJ overruled these objections in his decision stating that Padilla's representative at the hearing "was given ample opportunity to cross-examine the VE" and that Padilla had only questioned the VE regarding the meaning of "simple instructions" and the breaks in two-hour intervals through the work day. (DN 11-2, at PageID # 78.) The ALJ then stated that the VE's testimony regarding "job information [wa]s found to be reliable." (*Id.*) Padilla now contends that the hypothetical questions were not accurate portrayals of Padilla's cognitive capabilities, and, therefore the VE's opinions cannot serve as substantial evidence to support the ALJ's conclusion. (DN 17, at PageID # 722.)

A vocational expert's testimony can constitute substantial evidence to support the Commissioner's finding that a claimant is capable of performing a significant number of jobs existing in the local, regional, and national economies, *Bradford v. Sec'y Dep't. of Health & Human Servs.*, 803 F.2d 871, 874 (6th Cir. 1986) (per curiam), so long as a vocational expert's testimony is based on a hypothetical question which accurately portrays plaintiff's individual physical and mental impairments." *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (quoting *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984)). Padilla argued that a proper hypothetical question to a VE should "be a more complete assessment of her physical and mental state," citing to *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002). (DN 17, at PageID # 722.) However, the Sixth Circuit has subsequently explained that *Howard* does not "require hypothetical questions to vocational experts to include lists of claimants' medical conditions." *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004). Instead, it need only reference a claimant's limitations. *Id.* (citing *Foster v. Halter*, 279 F.3d 348, 356 (6th Cir. 2001) and *Varley*, 820 F.2d at 780).

Here, the ALJ's hypothetical question to the VE was identical the ALJ's RFC assessment. (DN 11-2, at PageID # 70, 114.)  The undersigned already determined above that the ALJ's RFC determination as to Padilla's mental impairments, including his rejection of the marked limitations posited by Ms. Conyer, was supported by substantial evidence.  Accordingly, the undersigned finds that the hypothetical question posed to the VE included a sufficient statement of Padilla's mental impairments.  Though Padilla pointed to test scores that she argued indicated she was unable to perform the reasoning, speaking, math, and writing abilities of the jobs identified by the VE, she did not specifically raise this concern in either her cross-examination of the VE or her post-hearing brief to the ALJ.  Further, as the ALJ noted in his decision, Padilla identified no treatment provider who gave her "any recent limitations/restrictions in her activities due to any mental impairment."  (DN 11-2, at PageID # 74.)  In her brief she points only to testing results, not any limitations imposed.

Therefore, the undersigned concludes that the VE's testimony constitutes substantial evidence to support the ALJ's step five finding of the availability of other work in the economy that Padilla was capable of performing.  *Wilson*, 378 F.3d at 548-49.  Accordingly, the undersigned finds no error in the ALJ's step five analysis.

### III.  RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that final decision of the Commissioner be **AFFIRMED**.

Colin H Lindsay, Magistrate Judge
United States District Court

cc:  Counsel of record
February 5, 2020

## **Notice**

Pursuant to 28 U.S.C. § 636(b)(1)(B)-(C), the undersigned Magistrate Judge hereby files with the Court the instant findings and recommendations. A copy shall forthwith be electronically transmitted or mailed to all parties. 28 U.S.C. § 636(b)(1)(C). Within fourteen (14) days after being served, a party may serve and file specific written objections to these findings and recommendations. Fed. R. Civ. P. 72(b)(2). Failure to file and serve objections to these findings and recommendations constitutes a waiver of a party's right to appeal. *Id.; United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981); *see also Thomas v. Arn,* 474 U.S. 140 (1985).