UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| CRUCITA M. PADILLA, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 3:18-CV-580-CHB |
| ) | |
| v. ) | |
| ) | **ORDER ADOPTING REPORT AND** |
| ANDREW SAUL,[1] COMMISSIONER OF ) | **RECOMMENDATION** |
| SSA, ) | |
| ) | |
| Defendant. | |

\*\*\* \*\*\* \*\*\* \*\*\*

Plaintiff Crucita M. Padilla filed this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the Commissioner of Social Security's decision to deny her claim for Supplemental Security Income ("SSI"). [R. 1] The Court referred the action to Magistrate Judge Colin Lindsay for a report and recommendation pursuant to 28 U.S.C. § 636. [R. 15] The Magistrate Judge recommended that the Court affirm the final decision of the Commissioner. [R. 24] Subsequently, the Plaintiff filed Objections to the Magistrate Judge's Report and Recommendation [R. 25], and the Commissioner responded [R. 27]. Having reviewed the administrative record, the parties' submissions, and the applicable law, the Court will **ADOPT** the Magistrate Judge's Report and Recommendation [R. 24] and **OVERRULE** the Plaintiff's Objections [R. 25].

**I.    Background**

In October 2015, Plaintiff Crucita Padilla applied for SSI, alleging disability beginning May 1, 2015. [R. 11-5] Plaintiff's application was denied initially and again on reconsideration.

---

[1] Andrew Saul was sworn in as Commissioner of Social Security on June 17, 2019, during the pendency of this action. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Commissioner Saul is automatically substituted as a party.

[R. 11] At Plaintiff's request, an administrative hearing was conducted on December 12, 2017, before Administrative Law Judge ("ALJ") William C. Zuber. [R. 11-2] On March 2, 2018, ALJ Zuber ruled that Plaintiff was not entitled to SSI. [*Id.*] This decision became the final decision of the Commissioner on June 29, 2018, when the Appeals Council denied Plaintiff's request for review. [*Id.*] Plaintiff filed the instant action on August 29, 2018, seeking review of the ALJ's decision. [R. 1]

II.  **Standard of Review**

When a party objects to a report and recommendation, the Court reviews *de novo* only those portions of the report to which objection is made. 28 U.S.C. § 636(b)(1)(C). The Court may adopt without review any portion of the report to which no objection is made. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). On review, the Court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). Accordingly, the Court will review *de novo* the portions of Judge Lindsay's recommendation to which Plaintiff objects to determine whether relief is warranted.

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Colvin v. Barnhart*, 475 F.3d 727, 729–30 (6th Cir. 2007) (citation omitted). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citation omitted). Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Id.* (citations omitted). Rather, the Court must "affirm the Commissioner's conclusions unless the Commissioner failed to apply the correct legal standard or made findings of fact that are

unsupported by substantial evidence." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citation omitted). If supported by substantial evidence, the Commissioner's findings must be affirmed, even if there is evidence favoring Plaintiff's side. *Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 349 (6th Cir. 1988). In other words,

> [t]he findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion . . . This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.

*McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

To determine disability, the ALJ conducts a five-step analysis pursuant to 20 C.F.R. § 416.920.

1. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.

2. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. . . .

3. Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience.

4. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled.

5. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Colvin*, 475 F.3d at 730 (internal citations omitted).[2] The burden of proof rests with the claimant on steps one through four. *Preslar v. Sec'y of Health and Human Servs.*, 14 F.3d 1107, 1110 (6th

---

[2] Although *Colvin* involved claims for both SSI and Disability Insurance Benefits ("DIB"), the regulations governing the evaluation of disability for SSI (found at 20 C.F.R. § 416.920) and DIB (found at 20 C.F.R. § 404.1520) are identical for purposes of the five-step analysis. *See, e.g.*, *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003) (noting the "parallel" regulations governing DIB and SSI claims); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990) (referencing both regulations in reciting the five-step sequential process).

Cir. 1994). At the last step, the burden of proof shifts to the Commissioner to identify "jobs in the economy that accommodate [Plaintiff's] residual functional capacity." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). An individual's residual functional capacity ("RFC") is the most a claimant can still do despite her limitations. *See* 20 C.F.R. § 416.945(a)(1) (2020). If the ALJ makes a dispositive finding at any point in the five-step analysis, the review terminates. *Colvin*, 475 F.3d at 730; 20 C.F.R. § 416.920(a)(4) (2020).

### III. Discussion

The ALJ made several findings in the required sequence. He first determined that Padilla had not engaged in substantial gainful activity since her October 2015 application date. [R. 11-2 Page ID #: 67] He next determined that Padilla had the severe impairments of degenerative disc disease of the lumbar spine, osteoarthritis of the hip, diagnostic history of obesity, post-traumatic stress disorder, depression, anxiety, and borderline intellectual functioning. [*Id.* at Page ID #: 67–68] The ALJ then found that Padilla did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [*Id.* at Page ID #: 68]

The ALJ concluded at step four that Plaintiff could engage in a limited range of "light work" except she is further limited to:

> simple, routine, 1-3 step tasks that are non-fast paced or quota driven: no more than occasional climbing of ramps and stairs; frequent balancing, stooping, kneeling, crouching, and crawling; no climbing of ladders, ropes, or scaffolds; occasional exposure to vibration; occasional contact with coworkers and supervisors but no contact with the general-public; any changes in her work routine or environment would be rare and gradually introduced; and she can sustain concentration, persistence, and pace for periods of 2-hours at a time.

[*Id.* at Page ID #: 70] The ALJ further found that Plaintiff can perform her past relevant work as a "cleaner/housekeeper." [*Id.* at Page ID #: 76] Although the ALJ found that Plaintiff is capable of performing this past relevant work (which would allow him to terminate review), he

proceeded to step five to find that there are other jobs in the national economy that Padilla is also able to perform. [*Id.* at Page ID #: 77] Based on the testimony of a vocational expert ("VE"), the ALJ concluded that Plaintiff was capable of performing the jobs of a laundry worker, an inspector, and a trimmer/cutter. [*Id.* at Page ID #: 77–78] The VE identified these jobs based on a hypothetical which mirrored the ALJ's RFC. [*Id.* at Page ID #: 70, 114–15]

Plaintiff disagrees with three main conclusions in Magistrate Judge Lindsay's Report and Recommendation:

1. That the ALJ supported his determination of Padilla's physical and mental RFC with substantial evidence;

2. That the ALJ supported his determination that Padilla could perform past relevant work with substantial evidence and that any error by the ALJ at this step was harmless;

3. That the vocational expert's testimony constituted substantial evidence to support the ALJ's alternate step five finding of the availability of other work in the economy that Padilla was capable of performing.

The Court will address each objection in turn.

### A. The ALJ's Determination of Padilla's Physical and Mental Residual Functional Capacity

Plaintiff first argues that the ALJ failed to give appropriate weight to her one-time physical and mental consultative examiners' ("CE") opinions. [R. 25 p. 1] These CEs examined Plaintiff but do not (and did not) have ongoing treatment relationships with her. *See* 20 C.F.R. § 416.902 (2020); *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). The opinions of one-time CEs are "entitled to no special deference." *Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 226 (6th Cir. 2019) (citing *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994); *Atterberry v. Sec'y of Health and Human Servs.*, 871 F.2d 567, 571–72 (6th Cir. 1989)).

The source of a medical opinion dictates the process by which the ALJ gives it weight. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375–76 (6th Cir. 2013). Generally, the ALJ is

required to give more weight to a source who has examined the claimant than one who has not and more weight to a source who regularly treats that claimant than one who has not. *Id.* at 375. In affording weight to an examining source, the ALJ considers several enumerated factors, including "the nature and length of the doctor's relationship with the claimant and whether the opinion is supported by medical evidence and consistent with the rest of the record." *Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011) (citation omitted); *see also Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010). However, a medical opinion from an examining source is "never assessed for 'controlling weight'" like an opinion of a treating physician. *Gayheart*, 710 F.3d at 376. Further, unlike when an ALJ gives less than "controlling weight" to the opinion of a treating physician, an ALJ is not required to give "good reasons" for the weight ascribed to an examining physician's opinion. *Ealy*, 594 F.3d at 514. As the Sixth Circuit has explained, "an ALJ is procedurally required to give good reasons in its notice of determination or decision for the weight it gives the claimant's treating source's opinion. However, this requirement only applies to *treating* sources." *Id.* (internal citations and formatting omitted) (emphasis in original). Put simply, the ALJ "must make a connection between the evidence relied on and the conclusion reached." *Tucker*, 775 F. App'x at 226. The ALJ need only "say enough to allow the appellate court to trace the path of his reasoning." *Stacey*, 451 F. App'x at 519 (citation and quotation omitted).

Plaintiff claims that the Magistrate Judge and ALJ "pointed only to that evidence that tended to support a finding of non-disability" without explaining why they discounted evidence supporting Plaintiff's claims. [R. 25 p. 2] She cites *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013) in support of her argument that "some explanation should have been given for ignoring [a] large portion of the record." *Id.* at 379. In *Gayheart*, the issue was whether the ALJ appropriately deferred to the opinions of a non-treating, non-examining medical expert, *id.*

at 371, and a mental CE, *id.* at 372, over the opinion of a treating source in determining: (1) at step three that the combination of the plaintiff's impairments did not meet the criteria of a listed impairment; and (2) the limitations on the plaintiff's RFC for use in steps four and five. *Id.* at 375. The ALJ afforded the treating source's opinion "little weight." *Id.* at 376. In analyzing whether substantial evidence supported this finding, the Court noted that the ALJ's decision did not discuss "or even acknowledge" the extensive treatment notes from another therapist (in the treating source's practice center) who saw the plaintiff "on a regular basis for 13 months." *Id.* at 369, 378. The Court took issue with the "complete absence from the ALJ's evaluation of the record" of this therapist's opinions and treatment notes, which lent "significant support" to the opinions of the other treating provider. *Id.* at 379. Here, however, because neither of Plaintiff's CEs were treating sources, the "controlling weight" analysis is inapplicable. *See id.* at 376 ("[O]pinions from nontreating and nonexamining sources are never assessed for 'controlling weight.'"). Moreover, Plaintiff cites to the same evidence in the record as ALJ Zuber considered in his opinion. The ALJ did not ignore or fail to acknowledge large portions of the record. Instead, as discussed below, the ALJ made the requisite connections between the evidence he relied on and his conclusions for both the physical and mental RFC determinations. *Tucker*, 775 F. App'x at 226. No more is required.

1. **Physical Consultative Examiner: Dr. Robert Nold**

Based on a single examination (and one medical record), Dr. Robert Nold opined that Padilla would have problems with squatting, stooping, bending, and lifting. [R. 11-7 Page ID #: 429] Specifically, he reported that Padilla could probably lift "about 30 to 35 pounds on occasion" and "5 to 10 pounds more frequently;" is able to stand for about half an hour at a time; and could stand and walk for about four hours out of an eight-hour day (with "frequent" times when she would have to sit or lie down). [*Id.*]

The ALJ afforded "[l]imited weight" to Dr. Nold's opinion. [R. 11-2 Page ID #: 75] The ALJ explained that the extent of Dr. Nold's opinion did not appear consistent with either the claimant's overall history of conservative care or the radiographic studies in the record. [*Id.* at Page ID #: 76] Notably, the ALJ did not wholly disregard the opinion of Dr. Nold. [*Id.* at Page ID #: 75] Instead, the ALJ accepted that Plaintiff "has the ability to work within a restricted range of light exertional level work" and incorporated this finding into the RFC determination. [*Id.*]

Plaintiff takes particular issue with the ALJ's characterization of Plaintiff's treatment for her physical impairments as "conservative" in nature. [R. 11-2 Page ID #: 72, 76] The Magistrate Judge found no error in the ALJ's reliance on Padilla's "conservative care" to support the weight he ascribed to Dr. Nold's opinion, citing *Branon v. Comm'r of Soc. Sec.*, 539 F. App'x 675, 678 (6th Cir. 2013). [R. 24 p. 8] In *Branon*, the plaintiff refused more aggressive treatment, eventually "even foregoing . . . steroid injections and pain medication and choosing to rely only on over-the-counter medications." *Id.* The Sixth Circuit found that "[t]his conservative treatment approach suggests the absence of a disabling condition." *Id.*

Plaintiff contends that (unlike *Branon*) she "was cooperative with her providers in an attempt to accommodate" her pain. [R. 25 p. 3] However, the Magistrate Judge's citation to *Branon* merely demonstrates that the Sixth Circuit has previously used the term "conservative" to describe treatment history in the context of supportability of an opinion. It is not a defined term or technical legal standard. Here, the ALJ supported his characterization of Plaintiff's treatment as "conservative" with objective medical evidence. The ALJ first noted that Plaintiff's treatment history includes "prescribed medications," injections that in some cases offered 50% pain relief for periods ranging from three days to more than two weeks, and "some physical therapy." [R. 11-2 Page ID #: 72; R. 11-7 Page ID #: 393–96, 438–42] The ALJ then noted the

lack of "significant follow-up with an orthopedist or neurosurgeon" and an absence of a history of "surgery of her lumbar spine or right hip" as supporting "conservative care." [R. 11-2 Page ID #: 72]

Plaintiff disagrees, and her objection cites the same treatment history in arguing this is not "conservative" care:

> She was prescribed Skelaxin for her back pain . . . [H]er medication history includes NSAIDs, muscle relaxants, and neuropathics including Gabapentin . . . Plaintiff attended physical therapy from February 1, 2017 through October 27, 2017 . . . In 2015, Dr. Barnett treated Plaintiff . . . with two L4 transforaminal epidural steroid injections . . .

[R. 25 p. 3] But these facts distinguish this case from Plaintiff's citation to *Underwood v. Soc. Sec. Admin.*, No. 3:16-CV-546, 2017 WL 128518 (M.D. Tenn. Jan. 11, 2017). In *Underwood*, the plaintiff's treatment history included "multiple surgeries" in addition to pain medications, physical therapy, and spinal injections. *Id.* at *8. The Court opined that such treatments, when considered together, were not "conservative." *Id.* Here, Padilla has not undergone "multiple surgeries" nor is there an indication that she followed up with an orthopedist or neurosurgeon. In essence, Plaintiff's objection to the weight ascribed to Dr. Nold's opinion asks this Court to re-weigh the evidence, which the substantial evidence standard prohibits. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).

Plaintiff counters that there existed "rather extensive examination findings and a course of treatment that was probative of her claim for disability." [R. 25 p. 2] For example, Plaintiff indicated that her evaluation with Dr. Nold "revealed limited range of motion in the knee and right hip with significant pain over the hip joints, an unsteady gait, and a limited squat." [*Id.*] However, the ALJ fully considered the findings in Dr. Nold's examination. The ALJ noted that Dr. Nold's examination revealed that Padilla did not walk with a cane or other assistive device,

and that she had "normal" gait as well as "normal motor strength in both lower extremities." [R. 11-2 Page ID #: 75 (citing R. 11-7 Page ID #: 428)]

Furthermore, the ALJ incorporated his earlier analysis of the radiographic studies of record, noting that there were only minimal findings on these studies. The ALJ explained that a September 2015 MRI indicated only minimal facet arthropathy, an October 2016 x-ray of her hip showed no displaced fracture of the right hip, and a March 2017 MRI of her hip and pelvis was negative. [R. 11-2 Page ID #: 71–72] The ALJ also cited to a May 2015 lumbar MRI that revealed little change from a May 2012 MRI, minimal facet arthropathy, normal lumbar disc spaces, "no lumbar disc herniation," and "no lumbar central canal or foraminal narrowing." [*Id.* at Page ID #: 72 (quoting R. 11-7 Page ID #: 460)]. The ALJ further cited to the May 2012 MRI itself that noted "normal signal in the intervertebral discs;" "no evidence of focal disc protrusion, central canal or foraminal stenosis;" and the impression of a "normal exam." [*Id.* (quoting R. 11-7 Page ID #: 621)]. In sum, the ALJ took Plaintiff's severe conditions—degenerative disc disease of the lumbar spine, osteoarthritis of the hip, and diagnostic history of obesity—into consideration when determining the physical RFC. [*Id.*] Because substantial evidence supports the ALJ's physical RFC determination, Plaintiff's objection is unpersuasive. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006).

### 2. Mental Consultative Examiner: Ms. J. Lorilea Conyer

Similarly, Plaintiff contends that it was error for the ALJ to afford only "partial weight" to her mental CE's opinion. [R. 17 p. 14] Specifically, the ALJ rejected Ms. Lorilea Conyer's conclusion that Plaintiff had "marked" limitation in her capacity to understand, remember, and carry out instructions toward performance of simple, repetitive tasks. [R. 11-2 Page ID #: 76] The ALJ did not accept this finding because it did not appear consistent with the record as a whole. [*Id.*]

Plaintiff argues that "the ALJ did not consider certain probative evidence that would support Plaintiff's claim for disabling limitations, including [Ms. Conyer's] own examination findings, [Plaintiff's] lengthy mental health treatment history, and limitations that were born out through psychological testing." [R. 25 p. 3] However, the ALJ addressed each of these categories in his decision to assign only partial weight to Ms. Conyer's opinion and to reject her finding of "marked" mental limitation.

First, as to the examination findings, the ALJ noted that Ms. Conyer had ruled out any intellectual disorder that would have supported the marked rating. [R. 11-2 Page ID #: 76] In addition, the ALJ did not reject all of Ms. Conyer's opinion. For example, Ms. Conyer opined that Padilla's ability to sustain attention and concentration towards performance of simple repetitive tasks appeared affected by her impairments to a slight degree, meaning that Padilla had a "mild limitation in this area" but that she could "generally function well." [R. 11-7 Page ID #: 435–36] Similarly, the ALJ's RFC finding indicated that Padilla could only "sustain concentration, persistence, and pace for periods of 2-hours at a time." [R. 11-2 Page ID #: 70] This limitation is consistent with Ms. Conyer's finding of a "mild" impairment. Ms. Conyer also found that Padilla had no limitation in her ability to respond appropriately to supervisors and coworkers in a work setting. Here, the ALJ limited Padilla to "occasional contact with coworkers and supervisors" which reflects a higher degree of limitation than that posited by Ms. Conyer. The ALJ properly considered Ms. Conyer's examination results and supported his rationale for assigning it "partial weight."

Second, as to Plaintiff's mental health treatment history, the ALJ noted Padilla's lack of inpatient treatment and "some" outpatient treatment. [R. 11-2 Page ID #: 76] He described her "long diagnostic history of depressive and anxiety disorders with prescribed medications." [*Id.* at Page ID #: 72] However, he found that Padilla's "emotional symptoms have been overall

maintained through treatment follow-up." [*Id.* at Page ID #: 74] The ALJ explained that no treatment provider "has given the claimant any recent limitations/restrictions in her activities due to any mental impairment." [*Id.*] In addition, Padilla was working part-time cleaning apartments, which cut against a finding of "marked" limitation to follow instructions for simple, repetitive tasks. [*Id.*] Based on the record as a whole, the ALJ properly incorporated Plaintiff's mental health treatment history into his RFC determination.

Third, as to Plaintiff's psychological testing, the ALJ relied on the same psychological testing that Plaintiff points out. The ALJ highlighted a number of results from this testing, including that Padilla presented clean and dressed appropriately during testing; rapport was easily established; and she was overall cooperative. [*Id.* at Page ID #: 73] He also observed that Padilla received an IQ of seventy-eight and that the report noted that Padilla's "scores representing processing speed and perceptual reasoning fell in the average range." [*Id.*] He stated that the testing was "suggestive of 'moderate likelihood' of issues related to sustained attention." [*Id.*] Moreover, the ALJ noted evidence in the record of testing that revealed borderline intellectual functioning as opposed to a significant cognitive disorder. [*Id.* at Page ID #: 73–74] In sum, the ALJ took the psychological testing into consideration when limiting Plaintiff to "simple, routine, 1-3 step tasks that are non-fast paced or quota driven." [*Id.* at Page ID #: 74] ALJ Zuber made the requisite connection between the evidence he relied on and the conclusion he reached. *Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 226 (6th Cir. 2019). Accordingly, Plaintiff's objection as to Ms. Conyer is overruled.

### B. The ALJ's Determination at Step Four that Padilla Could Perform Past Relevant Work

Plaintiff challenges the ALJ's step four finding that she can perform her past relevant work as a cleaner/housekeeper, as generally performed and as she performed it. [R. 17 pp. 19–

24] Specifically, she claims that the ALJ "failed to appropriately analyze" Padilla's "accommodated" work when reaching this conclusion. [*Id.* at p. 19] The Magistrate Judge found that Padilla waived this argument by failing to raise it below. [R. 24 p. 12] Even without waiver, though, the Magistrate Judge found that any error in the ALJ's step four finding was harmless. [*Id.*] Plaintiff objects to both findings. [R. 25 p. 4]

Plaintiff argues that her recent work as an apartment cleaner was "accommodated" because she worked for her mother (the landlord) approximately twenty hours per week, was able to take breaks as needed, and had lower expectations for productivity. [*Id.* at pp. 4–5] Plaintiff references 20 C.F.R. § 416.973(c), arguing that "special conditions" apply to this work, such that it may not reflect an ability to perform substantial gainful activity. [R. 17 p. 20] This regulation states, in part:

> If your work is done under special conditions, we *may* find that it does not show that you have the ability to do substantial gainful activity . . . However, work done under special conditions *may* show that you have the necessary skills and ability to work at the substantial gainful activity level.

20 C.F.R. § 416.973(c) (emphasis added). The regulation provides examples of "special conditions," including situations where the claimant—because of her impairment—is allowed to "take frequent rest periods," is assigned work especially suited to her impairment, is permitted to work at "a lower standard of productivity or efficiency," or is given the opportunity to work (despite the impairment) "because of family relationship." *Id.* Accordingly, Plaintiff points to her hearing testimony, where she described her recent work:

> [My mother] will tell me to do something or she'll describe how it's done or what's done and because she already knows how my condition is, so she, you know, she's my mom, but she knows how to work around it and help me out. So that's the reason why I love my job . . . I can actually take a break without having to wait an hour or two to take a 15-minute break . . .

[R. 11-2 Page ID #: 63] However, as discussed below, Plaintiff's objection is unpersuasive for at least four reasons.

First, Plaintiff's testimony regarding accommodated work related *only* to the recent work she performed for her mother approximately twenty hours per week, which did not rise to the level of substantial gainful activity. Nowhere in the record did she testify that her past relevant work (working full time as a cleaner/housekeeper for other employers) was accommodated. The ALJ specifically found that Plaintiff's current part-time work cleaning apartments at her mother's building was not "substantial gainful activity." [R. 11-2 Page ID #: 67] Instead, only the full-time cleaning work that Plaintiff performed "at times" from 2009 to 2015 constituted substantial gainful activity.[3] [*Id.* at Page ID #: 76; R. 11-6 Page ID #: 273] Thus, the ALJ did not err in omitting Plaintiff's recent accommodations in determining her past relevant work as a cleaner/housekeeper.

Second, even if Plaintiff was attempting to suggest that her prior full-time cleaning work was accommodated, she failed to cross-examine the VE on this issue and thus waived this argument. The VE was present for and listened to Plaintiff's entire testimony. [R. 11-2 Page ID #: 113] Based on Plaintiff's testimony, the VE characterized Padilla's past relevant work as the light, unskilled job of a cleaner/housekeeper. [*Id.*] The VE did not include accommodations or special conditions in this classification. [*Id.*] Moreover, work done under special conditions may show that a claimant possesses "the necessary skills and ability to work at the substantial gainful activity level." 20 C.F.R. § 416.973(c). During cross-examination, Plaintiff did not challenge the

---

[3] Indeed, Plaintiff testified at the hearing that she has done the apartment-cleaning job full time:
    Q:    Okay. Have you ever done the house, the apartment cleaning job full-time?
    A:    Pretty much. That was little back fall just in case I couldn't really keep a job or steady a job.
    Q:    Okay. In the past 15 years have you done it full-time?
    A:    Oh, yeah . . .
[R. 11-2 Page ID #: 92–93]

VE's characterization of her past relevant work as lacking the necessary accommodations or special conditions. Plaintiff also failed to raise this issue in her post-hearing brief. [R. 11-6 Page ID #: 343] Because Plaintiff failed to probe this alleged deficiency at the hearing and in her post-hearing brief, she forfeited this argument. *See, e.g.*, *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 636 (6th Cir. 2016) (internal citation omitted); *Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 374–75 (6th Cir.2006).

Third, the ALJ asked the VE the proper hypothetical question—which included Plaintiff's limitations—and the VE found that Plaintiff could perform her past relevant work as an apartment cleaner, both as generally and actually performed. Here, the ALJ asked the VE to assume a hypothetical person of Plaintiff's age, education, work history and RFC, and to determine whether that hypothetical individual could perform Plaintiff's past relevant work. Specifically, this hypothetical person could perform simple, routine, one to three step tasks at the light exertional level, that would be not fast paced or quota driven, with no more than occasional climbing of ramps and stairs, frequent balancing, stooping, kneeling, crouching, or crawling, no climbing of ladders, ropes, or scaffolds, tolerance for occasional exposure to vibration, occasional contact with co-workers and supervisors, and no contact with the general public. [R. 11-2 Page ID #: 114] Additionally, any changes to the work routine or environment would be rare and gradually introduced, and such an individual could sustain concentration, persistence or pace for periods of two hours at a time. [*Id.*] The VE testified that such an individual could perform the job of apartment cleaner, both as actually and generally performed by Plaintiff. [*Id.*] To the extent Plaintiff argues the hypothetical was incomplete because it failed to include Ms. Conyer's finding of a "marked" impairment in Plaintiff's capacity to understand, remember, and carry out instructions, the Court finds such an objection meritless in light of the ALJ's reasoned rejection of this conclusion by Ms. Conyer. *See supra*. This testimony constituted substantial

evidence supporting the ALJ's finding that Plaintiff could perform her past relevant work. Because the ALJ's description of Padilla's RFC accurately reflected Padilla's abilities, the ALJ's conclusion is supported by substantial evidence. *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

Fourth, even if substantial evidence did not support the ALJ's finding at step four because he did not properly analyze Plaintiff's "accommodated" work, any such error is harmless in light of the ALJ's alternative finding at step five that Plaintiff could perform other jobs that exist in substantial numbers in the national economy. *See Demarco v. Comm'r of Soc. Sec.*, No. 4:17-CV-1376, 2018 WL 3616258, at *4 (N.D. Ohio July 30, 2018) (citing *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 428 (6th Cir. 2007)); *Waters v. Comm'r of Soc. Sec.*, No. 2:17-CV-752, 2018 WL 2015845, at *7 (S.D. Ohio May 1, 2018). As detailed below, because substantial evidence supports the ALJ's conclusion that Plaintiff could perform the jobs of laundry worker (73,000 jobs nationally), inspector (120,000 nationally), and trimmer/cutter (160,000 nationally), [R. 11-2 Page ID #: 77–78], no remand is warranted for the alleged step four error.

### C. The ALJ's Determination at Step Five

Plaintiff's final objection asserts that her cognitive limitations "will unquestionably have an impact on her ability to perform the jobs" of laundry worker, inspector, and trimmer/cutter—which have reasoning levels of two. [R. 25 p. 6] Under the Dictionary of Occupational Titles ("DOT"), level two reasoning requires the individual "to carry out detailed but uninvolved written or oral instructions." *See, e.g., 751.684-014 Cutter, Hand*, Dictionary of Occupational Titles (4th ed. 1991). Plaintiff argues that a person who can perform only simple, routine, unskilled work is precluded from jobs requiring the ability to carry out "detailed" instructions. [R. 25 p. 6]

The Sixth Circuit has recognized "the possibility that jobs requiring reasoning level of two or three might conflict with a claimant's simple-task limitation." *Joyce v. Comm'r of Soc. Sec.*, 662 F. App'x 430, 436 (6th Cir. 2016) (summarizing the practice of sister circuits). However, no precedent "requires the Commissioner to align DOT 'reasoning levels' with RFC classifications." *Monateri v. Comm'r of Soc. Sec.*, 436 F. App'x 434, 446 (6th Cir. 2011).

Here, Plaintiff first raised this objection in her post-hearing brief [R. 11-6 Page ID #: 343], and the ALJ overruled her objection. The ALJ reasoned that the VE has professional knowledge and experience in job placement and found that the expert's job information was reliable. [R. 11-2 Page ID #: 78] The ALJ further noted that while Plaintiff had ample opportunity to question the VE on this issue, she failed to raise any discrepancy between the occupations' DOT reasoning levels and the RFC at the hearing. Thus, Plaintiff did not bring the alleged conflict between the VE's testimony and the DOT job descriptions to the ALJ's attention. *See Ledford v. Astrue*, 311 F. App'x 746, 757 (6th Cir. 2008) (quoting *Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 374–75 (6th Cir.2006) ("[N]othing in applicable Social Security regulations requires the [ALJ] to conduct his or her own investigation into the testimony of a [VE] to determine its accuracy, especially when the claimant fails to bring any conflict to the attention of the [ALJ].")).

Plaintiff also takes the position that the Magistrate Judge failed "to acknowledge that the burden at Step 5 of the sequential evaluation process falls squarely on the Commissioner." [R. 25 p. 5] That is simply not the case, as the Magistrate Judge twice acknowledged the shift of the burden to the Commissioner at Step 5. *See* [R. 24 pp. 4, 13] In addition, the Magistrate Judge correctly stated that "[t]he Commissioner may meet this burden by relying on expert vocational testimony received during the hearing to determine what jobs exist in significant numbers in the economy that the claimant can perform considering the combination of his or her limitations."

[*Id.* at p. 13] *See Fry v. Comm'r of Soc. Sec.*, 476 F. App'x 73, 76 (6th Cir. 2012); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). The Commissioner satisfied his burden, and Plaintiff "may not now complain" in federal court when she "failed to cross examine" the VE on a topic "when [s]he had an opportunity to do so." *Kidd v. Berryhill*, No. 5:17-CV-420-REW, 2018 WL 3040894, at *6 (E.D. Ky. June 19, 2018) (quoting *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006)) (other citations omitted).

In addition to waiving this argument, Plaintiff's objection focuses only on the ability to carry out "detailed" instructions and fails to appreciate the important qualifier to level two reasoning: that such directions are also "uninvolved." *Baskette v. Berryhill*, No. 1:17-CV-135-GNS-LKK, 2018 WL 4027044, at *3 (W.D. Ky. Aug. 23, 2018) (quoting *Russell v. Comm'r of Soc. Sec. Admin.*, No. 1:13-CV-291, 2014 WL 1333262, at *15 (N.D. Ohio Mar. 31, 2014) (other citation omitted) ("While reasoning level two notes the worker must be able to follow 'detailed' instructions, it also . . . downplayed the rigorousness of those instructions by labeling them as being 'uninvolved.'")). At Plaintiff's hearing, the vocational expert testified that Padilla was not precluded from work requiring detailed but uninvolved instructions. [R. 11-2 Page ID #: 115] Accordingly, the ALJ found that Plaintiff could perform simple tasks that had some element of routineness to them.

The Court agrees with the ALJ that Plaintiff is capable of performing "simple, routine" tasks and that she has "commonsense understanding to carry out detailed but uninvolved . . . instructions." *See* [R. 11-2 Page ID #: 70 (stating the ALJ's RFC finding); *id.* at Page ID #: 78 (overruling Plaintiff's post-hearing objection)]; Dictionary of Occupational Titles, App. C (4th ed. 1991). The weight of authority holds that a person who can perform routine and unskilled tasks can (at a minimum) perform an occupation with a reasoning level of two. *See, e.g., Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009) (finding that a job requiring level three reasoning was

not inconsistent with claimant's ability to follow simple, concrete instructions); *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (finding that "level-two reasoning appears more consistent with" Plaintiff's ability to perform "simple and routine work tasks"); *Money v. Barnhart*, 91 F. App'x 210, 215 (3d Cir. 2004) ("Working at reasoning level 2 would not contradict the mandate that her work be simple, routine[,] and repetitive."). Thus, under the facts of this case, the ALJ's finding that Plaintiff could perform simple one to three step tasks is consistent with the ability to perform jobs requiring level two reasoning, and the ALJ did not err by relying on the vocational expert's testimony that Plaintiff could perform such jobs.

IV. **Conclusion**

Because the decision of the Commissioner was supported by substantial evidence,

**IT IS HEREBY ORDERED** as follows:

1. The decision of the Commissioner is **AFFIRMED**.

2. The Magistrate Judge's Report and Recommendation [**R. 24**] is **ADOPTED** to the extent not inconsistent with this opinion.

3. Plaintiff's Objections [**R. 25**] are **OVERRULED**.

4. A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

This the 3rd day of April, 2020.

*Claria Horn Boom*
CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY

- 19 -